RECEIVED

JUN 2 0 2007

LEGAL
ARKANSAS INSURANCE DEPT.

IN THE CIRCUIT COURT OF JACKSON COUNTY, ARKANSAS
CIVIL DIVISION

DWIGHT PIPES, INDIVIDUALLY AND AS
ADMINISTRATOR OF THE ESTATE OF
DIANE PIPES, AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED

1:07cv0035

VS.                                CASE NO. CV-2007-___102___

LIFE INVESTORS INSURANCE
COMPANY OF AMERICA
*********************************************************************

## CLASS ACTION COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiff, Dwight Pipes,

individually and as administrator of the estate of Diane Pipes, and on behalf of all others

similarly situated, who respectfully files this Class Action Complaint for Damages, as

follows:

1.      Dwight Pipes is the duly appointed and acting administrator of the Estate of

Diane Pipes.

2.      At all times relevant to this action, plaintiff, Dwight Pipes, resided in Jackson

County, Arkansas.

3.      At all times relevant to this action, decedent, Diane Pipes, resided in Jackson

County, Arkansas.

4.      Defendant is Life Investors Insurance Company of America, hereinafter "Life

Investors", upon information and belief, a foreign insurance company licensed to do and

doing business in the State of Arkansas.

5.    This Court has jurisdiction over this cause of action pursuant to Ark. Code Ann. § 16-13-201.

6.    This Court has jurisdiction over the parties to this matter.

7.    Venue is proper in Jackson County, Arkansas, pursuant to Ark. Code Ann. §16-60-109, as plaintiff and plaintiff's decedent resided in Jackson County, Arkansas, at the time the cause of action arose.

8.    On or about October 1, 2001, the Dwight and Diane Pipes purchased a policy of cancer insurance from Life Investors, bearing policy number 0D1497820. A copy of this policy is attached as Exhibit "A" to this Complaint.

9.    Pursuant to said policy of insurance, Life Investors is obligated to pay to the Pipes, specified benefits for various actual charges incurred by the Pipes, if either is diagnosed with cancer. Such benefits include, but are not limited to, benefits for: Radiation Therapy – In or Out Hospital; Chemotherapy – In or Out of Hospital; and Blood, Plasma, and Blood Components; and, Ambulance benefits.

10.    In December of 2004, Diane Pipes was initially diagnosed with stomach cancer.

11.    Over the following several months after his initial diagnosis of cancer, Diane Pipes underwent extensive, but necessary medical treatment, for the treatment of her cancer. The Pipeses incurred charges and were billed for all of this medical treatment, and associated services and items, by Diane Pipes's health care providers and other providers.

All these items and services played an integral and necessary role in the treatment of Diane Pipes's cancer.

12.    The Pipes timely submitted proofs of loss, medical records, medical bills and other documents associated with Diane Pipes's cancer treatment to Life Investors to receive the benefits due to them under the policy. Life Investors paid some of the benefits to the Pipeses; however, Life Investors also wrongfully denied payment for some of the benefits associated with Diane Pipes's cancer treatment.

13.    Pursuant to the terms and conditions of the policy, Life Investors was required to pay benefits to the Pipeses based on the "actual charges" incurred by the plaintiffs. Despite this obligation, Life Investors paid benefits to the Pipeses based on adjusted charges.

14.    The Pipeses are entitled to have this cause of action maintained as a class action, pursuant to Arkansas Rule of Civil Procedure 23 et seq. The proposed class would be defined as follows:

> All persons residing within the State of Arkansas who are/were cancer benefit insurance policyholders with Life Investors Insurance Company since January 1, 2006, and who have been and/or will be denied full payment for benefits under the Radiation Therapy – In or Out Hospital; Chemotherapy – In or Out of Hospital; Blood, Plasma, and Blood Components; and, Ambulance benefit provisions of their Life Investors Insurance Company cancer insurance policies. The class specifically excludes any cancer benefit insurance policies issued and/or purchased from Life Investors Insurance Company through any employee benefit plan governed by the Employee Retirement Income Security Act.

15.    Plaintiff believes that the class is composed of several hundred, if not thousands, of purchasers of the heretofore described insurance policies. The joinder of all individuals in one lawsuit is impracticable, and the disposition of claims in this transaction will provide a substantial benefit both to the parties and to the court.

16.    Plaintiff is entitled to have this cause of action maintained as a class action, pursuant to Ark. R. C. P. 23 et seq., for the following non-exclusive reasons:

    (a)    The persons constituting the plaintiff class are so numerous that individual joinder of all parties is impracticable;

    (b)    There exists a common character among the rights sought to be enforced on behalf of the plaintiff class among the class representatives and the unnamed members of the plaintiff class;

    (c)    The named plaintiffs are representative of the plaintiff class and members of the plaintiff class and is so situated as provide adequate representation for the unnamed plaintiff class members;

    (d)    The great majority of the unnamed plaintiff class members have no substantial interest in individually controlling the prosecution of their separate actions;

    (e)    There are common questions and issues of law and fact involved in this matter which predominate over questions affecting individual class members;

    (f)    Any defenses or theories of resistance to liability set forth by the defendant would be applicable to all claims presented by members of the plaintiff class; and

    (g)    The prosecution as separate actions by individual plaintiff class members will create a serious risk of inconsistent or varying adjudication which may prejudicially affect the claims of the other class members and subsequent litigation.

4

17.    The prosecution of separate actions by individual plaintiff class members possesses the risk that separate adjudication respecting the individual plaintiffs would not be entirely dispositive of the interest of plaintiff class members not parties to the litigation but would otherwise substantially impair or impede the ability of the plaintiff class members to protect their interests.

18.    The class action is a superior procedural vehicle for this litigation because the primary objective of the class action, economies of time, effort and expense, will be achieved and the class action may be more easily managed than some other procedural vehicle considering the opportunity to afford reasonable notice of significant phases of the litigation, including, *inter alia,* discovery to the plaintiff class members and the defendant.

19.    The named plaintiff's individual damages are not substantially different from the damages of other members of the plaintiff class. The plaintiff will fully and adequately protect the interests of the other members of the plaintiff class, who are too numerous to be named individually and to individually appear in this proceeding.

20.    There is a well-defined community of interest and the questions of law and fact affecting the parties to be represented.

21.    The claims or defenses of the representative party are typical of the claims or defenses applicable to the entire class.

22.    The plaintiff has retained counsel who are competent in the prosecution of this type of litigation.

23.    The questions of law and fact applicable to the entire plaintiff class

predominate over questions which may affect individual members, including the following non-exclusive particulars:

    (a)    Whether the defendant breached its contract/insurance policy with the class members by denying the class member policyholders full benefits for various charges and expenses incurred during the treatment of cancer under the Radiation Therapy – In or Out Hospital; Chemotherapy – In or Out of Hospital; Blood, Plasma, and Blood Components; and, Ambulance benefits provisions of the Life Investors Insurance Company cancer policies;

    (b)    Whether the plaintiff class members are entitled to declaratory and injunctive relief.

24.    Because of the size of some of the individual class member claims, few, if any, class members could afford to seek legal action for the wrongs complained of herein.

25.    The plaintiff asserts that Life Investors arbitrarily and capriciously breached the insurance contract by denying payment of benefits to the plaintiff - benefits which are clearly covered under the policy of insurance.

26.    The plaintiff has suffered damages as a result of Life Investor's breach of the contracts/insurance policies.

27.    The plaintiff avers that Life Investors has been unjustly enriched at the expense of the plaintiff, and thus, Life Investors is obligated to pay to the plaintiff the benefits entitled to him and to the estate under their policy of insurance.

28.    The plaintiff is entitled to declaratory relief determining the scope of coverage under the "actual charges" language in the policy of insurance, and injunctive relief requiring Life Investors to cease committing the wrongful acts complained of herein.

29.    Due to Life Investor's bad faith, and arbitrary and capricious denial of

insurance benefits, under Ark. Code Ann. § 23-79-208, the plaintiff is entitled to statutory penalties, costs, and attorney fees.

30.    Due to Life Investor's failure to pay full and complete benefits under the Radiation Therapy – In or Out Hospital; Chemotherapy – In or Out of Hospital; Blood, Plasma, and Blood Components; and, Ambulance benefit provisions within the time prescribed in the policy, the plaintiffs are entitled to statutory penalties, costs, and attorney fees, pursuant to A.C.A. § 23-79-208.

WHEREFORE, the plaintiff prays that the defendant, Life Investors Insurance Company, be served with a copy of this Petition and cited to appear and answer same, and after all legal delays and due proceedings had, that there by judgment entered herein as follows:

1.    That the defendant be served with a copy of this petition, and after due proceedings, this case be certified as a class action;

2.    That the plaintiff herein be awarded compensatory damages against the defendant in an amount to be proven at trial, together with interest, statutory penalties, costs and attorney fees afforded by law, where applicable;

3.    That declaratory relief be granted determining the scope of coverage under the "actual charges" language of the policy of insurance;

4.    That injunctive relief be granted requiring Life Investors to cease committing the wrongful acts complained of herein; and

5.    For all other legal and equitable relief as the case may permit.

Respectfully Submitted,
DWIGHT PIPES, Individually and as
Administrator of the Estate of Diane Pipes, and
on behalf of All Others Similarly Situated

By: _____

Tom Thompson, ABA #77133
Casey Castleberry, ABA #2003109
MURPHY, THOMPSON, ARNOLD,
 SKINNER & CASTLEBERRY
Post Office Box 2595
Batesville, Arkansas 72503-2595
Telephone: (870) 793-3821
Facsimile: (870) 793-3815

# *Life Investors*

## Insurance Company of America

A Stock Company (Hereinafter called: We, our or us)
Home Office: Cedar Rapids, Iowa
Administrative Office: P.O. Box 8063, Little Rock, Arkansas 72203
Toll Free Telephone No: 1-800-322-0426

## CANCER ONLY POLICY

### INSURING CLAUSE

We agree to insure you for loss incurred, while this policy is in force, from Cancer Positively Diagnosed after the "waiting period", subject to the provisions on the following pages of this policy.

This policy is issued in consideration of statements made in your application and the payment of the full first premium shown on the POLICY SCHEDULE page.

### IMPORTANT NOTICE

Please read the copy of the application attached to this policy. Carefully check the application and write to Life Investors Insurance Company of America, Administrative Office, P.O. Box 8063, Little Rock, Arkansas 72203 within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.

## *THIS IS A LIMITED POLICY - READ IT CAREFULLY*

### NOTICE OF 10 DAY RIGHT TO EXAMINE POLICY

If you are not satisfied with this policy, it may be returned for a full refund of premium. This may be done by delivering it or mailing it to us; or to the agent who took your application. This must be done not later than ten (10) days after you receive the policy. Immediately upon such delivery or mailing, this policy will be deemed void as of the Effective Date. Any premium paid for it will be refunded.

### PREMIUM RATE SUBJECT TO CHANGE - GUARANTEED RENEWABLE FOR LIFE

This policy can be continued for life. As long as the premium is paid before the end of the grace period we cannot cancel this policy. However, we may from time to time change the table of rates that apply to your premiums. Any such change will apply to all policies issued in your Class. No change in the table of rates will take effect for this policy until the Renewal Date next following the date of such change. We will give the Insured written notice at least 31 days prior to any rate change.

Signed for Life Investors Insurance Company of America by:

Craig A. Vermie
Secretary

President

Countersignature - Licensed Resident Agent
(If Required By Law)

Insured - DIANE PIPES

Term - MONTHLY

LPC01AR

Policy Date: 10-01-2001

Term Premium - $16.30

Policy Number: 0D1497820


EXHIBIT
A

LIFE INVESTORS INSURANCE COMPANY OF AMERICA
HOME OFFICE: CEDAR RAPIDS, IOWA
ADMINISTRATIVE OFFICE: LITTLE ROCK, ARKANSAS 72203

P O L I C Y   S C H E D U L E

INSURED:  DIANE PIPES                    POLICY NUMBER: 0D1497820

AGE AT ISSUE:    51 FEMALE               EFFECTIVE DATE: 09-01-2001


BENEFIT COVERAGE AND PREMIUMS


| FORM | EFFECTIVE DATE | TYPE OF COVERAGE | MONTHLY PREMIUM AMOUNT |
|------|----------------|------------------|------------------------|
| LPC0100 | 09-01-2001 | INDIVIDUAL            CANCER POLICY | $16.30 |
|  |  | POLICY DEDUCTIBLE:    NONE |  |
|  |  | DAILY HOSPITAL INDEMNITY BENEFIT:    $100 |  |
|  |  | RADIATION/CHEMOTHERAPY/BLOOD - |  |
|  |  | CALENDAR YEAR MAXIMUM:   $10,000 |  |


         TOTAL PREMIUM      $16.30
PAYMENT METHOD: GROUP BILLING

# SECTION A - DEFINITIONS

## YOU, YOUR OR YOURS

The Insured or any other Covered Person under a: Single Parent Family Policy or Family Policy.

## INSURED

The person who has answered the questions and signed the application and/or whose name appears on the POLICY SCHEDULE page.

## COVERED PERSON(S)

"Covered Person" means a person who has been accepted by us for coverage and includes only the Insured, the Insured's Spouse and/or Dependent Children who have/has provided Evidence of Insurability.

Any eligible Spouse or Dependent Child who does not become a Covered Person on the Effective Date may be added to the policy by our endorsement subject to:

(1) The completion of an application providing Evidence of Insurability; and

(2) payment of the additional premium, if required.

## SPOUSE

The Insured's legally married Spouse named in the application or the Insured's common law Spouse named in the application if legally recognized in the state where this policy was issued.

## INDIVIDUAL POLICY

Provides coverage for the Insured only.

## SINGLE PARENT FAMILY POLICY

Provides coverage for the Insured and at least one other Covered Person who is not the Insured's Spouse.

## FAMILY POLICY

Provides coverage for the Insured, the Insured's Spouse, and any other Covered Person.

## POLICY DATE

The date on which premium payments begin. It is the date shown on the face page of the policy. All renewal and anniversary dates are based on this date.

## EFFECTIVE DATE

The date on which the 30 day "waiting period" begins. The Effective Date is the date shown on the policy schedule page for all persons accepted for coverage at time of issue provided the application has been accepted by us, the policy is issued and the full first premium has been paid; or the date shown by endorsement for all persons added to coverage after the policy is issued.

## RENEWAL DATE

The date on which the next premium (Renewal Premium) is due. Renewal Dates are determined from the Policy Date by the mode of premium selected.

## POLICY ANNIVERSARY

The same day and month as the Policy Date for each year this policy remains in force.

## CONVERSION DATE

(1) The date upon which this policy becomes eligible for conversion (see SECTION J); or (2) the first Renewal Date after this policy becomes eligible for conversion if the premium payment mode is monthly; or (3) any other later date under (1), or any other later Renewal Date under (2) indicated in writing by the Insured.

## IMMEDIATE FAMILY

Your Spouse, father, mother, brothers, sisters, or children.

## USUAL AND CUSTOMARY

The normal and reasonable charge for a service, an apparatus, or medicine in the geographic area where provided.

## CLASS

Any group of individually insured persons under the same policy form who can be identified by the following characteristics: age at issue or original state of issue.

## COMMON CARRIER

Commercial airline, inter-city busline, or passenger train.

## EVIDENCE OF INSURABILITY

Correct and complete answers to the questions in the application, and your medical history if necessary, which are used by us to base our acceptance of you for coverage under this policy.

## CANCER

A disease evidenced by the presence of a malignancy characterized by the uncontrolled and abnormal growth and spread of malignant cells in any part of the body. This includes: Carcinoma, sarcoma, malignant melanoma, lymphoma, leukemia, Hodgkin's Disease or any malignant tumor. Cancer does not include: Leukoplakia, hyperplasia, polycythemia, moles, lesions, or similar diseases.

## SKIN CANCER

Basal cell epithelioma or squamous cell carcinoma. It does not include malignant melanoma or mycosis fungoides. These are not considered Skin Cancers under this policy for the purpose of paying benefits under Item 22, SECTION E, "Skin Cancer".

## VITAL ORGAN

A Vital Organ is any organ of the body whose functioning is necessary to the continuation of life. For the purposes of this definition, a Vital Organ shall include one of two lungs or one of two kidneys.

4

## POSITIVE DIAGNOSIS/POSITIVELY DIAGNOSED

A diagnosis made by a Pathologist based on a microscopic examination of fixed tissue or preparations from the hemic system either during life or post mortem (i.e. a pathological diagnosis). The Pathologist's judgment for establishing the diagnosis shall be based solely on the criteria of malignancy as accepted by the American Board of Pathology or the Osteopathic Board of Pathology after a study of the histocytologic architecture or pattern of the suspect tumor or tissue specimen. We will accept a clinical diagnosis in lieu of a pathological diagnosis only when: (a) The latter cannot be made; medical evidence substantially documents the diagnosis; and you receive definitive treatment for the Cancer; or (b) we pay benefits under Item 22, SECTION E, "Skin Cancer".

## DATE OF POSITIVE DIAGNOSIS

It is the day on which:

(a) Tissue specimen is taken, or the definitive diagnostic test is performed which confirms Positive Diagnosis when performed by a Pathologist; or

(b) Positive Diagnosis is pronounced when a clinical diagnosis is made.

## TOTAL DISABILITY

A sickness or injury which results in a person being:

(a) Unable to perform all of the substantial or material duties of his or her regular occupation during the first two (2) years beginning with the commencement of such sickness or injury; and

(b) unable to engage in any employment or occupation for which he or she is or becomes qualified by reason of education, training, or experience after the first two (2) years beginning with the commencement of such sickness or injury; and

(c) under the regular care and attendance of a Physician.

Successive periods of Total Disability separated by 60 days or less shall be considered one period of Total Disability.

## TOTALLY DISABLED

A person who meets the definition of Total Disability.

## DATE OF TOTAL DISABILITY

The first day on which a person meets the definition of Total Disability.

## HOSPITAL

"Hospital" means an institution which:

(1) Is operated pursuant to law; and

(2) is primarily engaged in providing or operating either on its premises or in facilities available to the hospital on a prearranged basis and under supervision of a staff of one or more duly licensed Physicians, medical, diagnostic, and major surgery facilities for medical care and treatment of sick and injured persons on an inpatient basis; and

(3) provides 24 hour nursing service by or under the supervision of registered graduate professional nurses (RN's).

"Hospital" does not include an institution operated as a:

(1) Convalescent home; convalescent, rest, or skilled nursing care facility, or hospice care center; or

(2) facility primarily affording custodial, rehabilitative or educational care; or

(3) facility for the aged, drug addicts, or alcoholics.

## HOSPITAL CONFINED

A Hospital stay during which you are confined as an in-patient and charged for room and board each day.

## PERIOD OF HOSPITAL CONFINEMENT

A Hospital confinement for which you are charged room and board for each day you are confined. Successive confinements separated by 30 days or less shall be considered as one Period of Hospital Confinement.

## OUTPATIENT

A person who is: Admitted to a Hospital for medical tests, treatment or services; released on the same day; and not charged for room and board. A person who receives treatment at: A Physician's office, an Ambulatory Surgical Center, or an Outpatient medical clinic is also an Outpatient.

## PHYSICIAN

Anyone, other than you or a member of your Immediate Family, who is duly licensed and certified as a practitioner of the healing arts, and legally licensed to diagnose and treat any sickness or injury within the scope of his or her license.

## PATHOLOGIST

A physician who has been certified by: The American Board of Pathology, or the Osteopathic Board of Pathology to practice pathological anatomy.

## RADIATION THERAPIST

A physician certified by the American Board of Radiology to administer therapeutic radiation.

## PHYSICAL THERAPIST

Anyone, other than you or a member of your Immediate Family, who is licensed and certified to treat physically disabled or handicapped persons with physical agents and methods such as: Massage, manipulation, therapeutic exercises, cold, heat, hydrotherapy, electrical stimulation and light to assist in rehabilitation.

## SPEECH PATHOLOGIST/THERAPIST

Anyone, other than you or a member of your Immediate Family, who is licensed and certified to practice speech pathology.

## PRIVATE DUTY NURSE

Anyone, other than you or a member of your Immediate Family who is a Licensed Practical Nurse (L.P.N.), a Licensed Vocational Nurse (L.V.N.), or a graduate Registered Nurse (R. N.)

## AMBULATORY SURGICAL FACILITY

A licensed surgical facility consisting of:  An operating room, facilities for the administration of general anesthesia, and a post-surgery recovery room.  It must also require that the patient be:  Admitted, treated, and released during a twenty four hour period.

## EXTENDED CARE FACILITY

An institution or that part of an institution licensed or accredited to provided nursing or rehabilitative care under the supervision of a Physician or a Registered Nurse which provides 24 hour skilled nursing service and maintains daily medical records on each patient.  It does not include institutions or parts of institutions which are primarily for the care and treatment of:  The aged, drug addicts, or alcoholics.

## HOSPICE CENTER

A facility which provides short periods of confinement for terminally ill patients.  A Hospice Center must operate a program of hospice care which meets the standards set forth by the National Hospice Organization.  It must also be:  Directed by a Physician, supervised by a Nurse, and licensed or certified by the state in which it is located.

## HOSPICE TEAM

A team of professionals including a Physician and a Nurse. It may also include:  A social worker, clergyman, clinical psychologist, physical therapist, or counselor.  It must exist primarily to administer a hospice care program meeting the standards of the National Hospice Organization in the patient's home with care available 24 hours a day, seven (7) days a week.

## SECTION B - FAMILY MEMBER ELIGIBILITY

Family members who are eligible to become Covered Persons under a Family Policy are:

(1)  The Insured's Spouse; and

(2)  the Insured's unmarried dependent children under age 19; and

(3)  the Insured's unmarried dependent children under age 25 who are full time students at a regular educational institution.

Eligible family members to become Covered Persons under a Single Parent Family Policy include all of the above except the Insured's Spouse.

Dependent children include only:  Natural born children of the Insured or the Insured's Spouse, or legally adopted children by both or either the Insured and/or the Insured's Spouse.

Any eligible family member who does not become a Covered Person on the Effective Date (except those who are excluded) must be added to the policy by our endorsement subject to:

(1)  The completion of an application providing Evidence of Insurability; and

(2)  payment of the additional premium, if required.

Any child of the Insured's or the Insured's Spouse born or adopted while this policy is in force as a Single Parent Family Policy or Family Policy is automatically covered from the moment of birth or the date the petition for adoption is filed, respectively.  We do not require an additional premium for such child.  The Insured does not need to notify us of the child's birth or adoption.

## SECTION C - BEGINNING OF BENEFIT PAYMENTS

(1)  If you are Positively Diagnosed with Cancer while this policy is in force, we will pay benefits according to the benefit provisions of this policy provided that:

   (a)  The Cancer is first diagnosed after the 30 day "waiting period"; and

   (b)  The loss is incurred (e.g.  treatment is received or the service is performed) while this policy is in force, and

   (c)  All other provisions of this policy apply.

(2)  Our benefits will begin on the Date of Positive Diagnosis, or as follows:

   (a) On the date you are admitted to the Hospital, if Positive Diagnosis is made during the same Period of Hospital Confinement; but not more than 90 days prior to the Date of Positive Diagnosis; or

   (b)  not more than 90 days before the Date of Positive Diagnosis for benefits payable under Items 21, "Outpatient Surgery"; or not more than 90 days before the Date of Positive Diagnosis for benefits payable under Item 20, "Outpatient Positive Diagnostic Testing" both under SECTION E; or

   (c)  on the date of terminal admission to the Hospital when Positive Diagnosis can only be made post-mortem; but not more than 90 days prior to the date of death.

Benefit payments will be made directly to the Insured, unless assigned according to the provision "Assignment" under SECTION K, for losses incurred by any Covered Person under this policy.  Proof of loss must be submitted to us for each incurred expense.

Under no conditions will we pay any benefits for losses or medical expenses incurred prior to the end of the 30 day "waiting period".

## SECTION D - DEDUCTIBLE

Deductible is the amount which must be met before any benefits are paid.  Only approved charges will be applied toward meeting your deductible.  Only charges for losses covered by this policy will be considered as approved charges.  If a deductible has been elected on the application, it will be shown in the Policy Schedule on page 2. All benefits in Section E and Section G are subject to the deductible before they will be paid.  The deductible shall apply to each new Positive Diagnosis of Internal Cancer for each Covered Person insured under this policy. Recurrence or metastatic spread of Cancer shall not be considered as a new Positive Diagnosis of Internal Cancer.

6

# SECTION E - BENEFITS

We will pay the benefits outlined in this section - subject to the applicable deductible - for the necessary treatment of Cancer:

## PART 1 - HOSPITAL INDEMNITY BENEFIT

We will pay the Hospital Indemnity Benefit shown on the POLICY SCHEDULE page each day you are Hospital confined for the treatment of Cancer. The maximum number of days we will pay this benefit during a continuous confinement shall not exceed 75. Beginning on the 76th day, our payments for Hospital Confinement will be made under Item 27, SECTION E "Extended Benefits."

## PART 2 - SCHEDULE OF BENEFITS

### 1. DRUGS AND MEDICINES

We will pay the greater of $25 per day or $250 per confinement for drugs and medicines given to you while Hospital Confined.

### 2. LABORATORY TESTS

We will pay $150 for laboratory tests performed while you are Hospital Confined during a Period of Hospital Confinement. In lieu of this benefit we will pay $300 for laboratory tests prior to the Period of Hospital Confinement when performed on an Outpatient basis not more than 30 days before admission to the Hospital.

### 3. DIAGNOSTIC TESTS

We will pay the following benefits for diagnostic tests while you are Hospital Confined:

(a) $150 for diagnostic tests, excluding biopsies, during a Period of Hospital Confinement; and

(b) the scheduled fee in the Schedule of Operations (Pages 10-11) when a biopsy is performed. Non-scheduled biopsies will be paid on a comparable basis not to exceed the lesser of:

(i) an amount determined by the 1974 California Relative Value Schedule (5th edition, revised) with a conversion factor of $120; or

(ii) $300.

Biopsy includes any of the following procedures: Needle or aspiration, endoscopic, punch, incisional, or excisional biopsies. If a biopsy is performed with another surgical procedure through the same incision, we will only pay for the procedure having the highest benefit as determined by this provision and Item 4 "Surgery" in this section. We will only pay benefits under this provision when a biopsy confirms Positive Diagnosis during the same Period of Hospital Confinement, subject to the limitations in SECTION C.

In lieu of the benefit under Item (a) above, we will pay $300 for diagnostic tests prior to a Period of Hospital Confinement when performed on an Outpatient basis not more than 30 days before admission to the Hospital.

### 4. SURGERY

We will pay the amount shown for a surgical operation (conventional, laser or stereotactic) and post operative care in the SCHEDULE OF OPERATIONS (pages 10-11) while you are Hospital Confined. Non-scheduled operations will be paid on a comparable basis not to exceed the lesser of:

(a) The Usual and Customary charge; or

(b) an amount determined by the 1974 California Relative Value Schedule, (5th edition, revised) with a conversion factor of $120; or

(c) $3000.

If two or more surgical procedures are performed through the same incision, we will only pay for the procedure having the highest benefit as determined by this provision.

### 5. ANESTHESIA

While you are Hospital Confined, we will pay 25% of the surgical fee, per procedure/operation, as determined by: Item 3(b) under "Diagnostic Tests" or Item 4, "Surgery," in this section. Anesthesia must be given by or under the direction of an Anesthesiologist; or by an Anesthetist under the direction of a Physician.

### 6. RECONSTRUCTIVE SURGERY

We will pay the amount shown for: Reconstructive surgery, anesthesia, post-operative care, and any other related charges for the general forms of Cancer listed below:

| General Form of Cancer | Maximum |
|---|---|
| (a) Skin Cancer-as defined in SECTION A | $250 |
| (b) Malignant melanoma | $350 |
| (c) Breast Cancer-after simple or total mastectomy-each breast | $350 |
| (d) Breast Cancer-after radical mastectomy each breast | $500 |
| (e) Cancers of the male or female genitalia | $500 |
| (f) Cancers of the head or neck, including oral cancers but excluding Skin Cancer and malignant melanoma | $750 |

Reconstructive surgery must be performed by a licensed plastic surgeon not more than two (2) years following the initial surgery to remove the Cancer. If reconstructive surgery is performed on the same day as the implantation of a prosthetic device we will pay only for the procedure having the higher benefit value. The lifetime maximum benefit for Skin Cancer is $500. We will not pay any benefits under this provision for Skin Cancer which is removed under Item 22 "Skin Cancer" in this section.

### 7. ADDITIONAL SURGICAL OPINIONS

We will pay $150 for the opinion of a second surgeon payable when your prescribed treatment is surgery as determined by the first surgeon. If the second opinion contradicts the first, we will pay $150 for a third opinion. You may use this benefit at your discretion. None of the other benefits in this policy will be affected by your decision. This benefit is payable only after Positive Diagnosis has been made.

Second or third surgical opinions must be received before surgery is performed. This benefit is not payable for Skin Cancer treated under Item 22, "Skin Cancer" in this section. We require that you send us in writing the initial surgical opinion in addition to the second or third surgical opinions.

8. PROSTHESIS

We will pay the Usual and Customary charges for a prosthetic device and its implantation not to exceed $1000 per prosthesis. The prosthesis must be authorized by your attending Physician and must require surgical implantation.

9. ATTENDING PHYSICIAN

We will pay the following benefits when your attending Physician, other than the surgeon who performed surgery, visits you while Hospital Confined:

(a)   $45 on the first day of confinement; and

(b)   $30 per day beginning on the second and each additional day of confinement.

A visit shall mean a personal visit to you by your attending Physician. We will only pay for one (1) visit in any one 24 hour period.

10. PRIVATE DUTY NURSING SERVICES

We will pay $100 per day for private duty nursing services while you are Hospital Confined. Private duty nursing services must be:

(a)   authorized by your attending Physician; and

(b)   provided by a Nurse who is not acting as a regular staff member of the Hospital in which you are confined and who is other than you or a member of your Immediate Family.

11. RADIATION THERAPY - IN OR OUT OF HOSPITAL

(a)   Treatments - We will pay the actual charges up to the calendar year maximum shown in the Policy Schedule for radiation therapy treatments authorized and administered by a Radiation Therapist. Under this provision, we will not pay related expenses for: Prescribed medications, physical exams, checkups, laboratory or diagnostic tests, treatment consultations and planning, or any similar such expenses. Radiation therapy does not include Laser or Stereotactic Surgery (See Section E, Item 4).

(b)   Associated Expenses - We will pay the actual charges not to exceed $250 per calendar year for the following radiation therapy related expenses: Prescribed medications for side effects, treatment consultations and planning, physical exams, checkups, and laboratory or diagnostic tests. We will only pay for expenses incurred for the items listed when such expenses have been submitted to us and authorized by the Radiation Therapist. Transportation expenses are not included as associated expenses. We will not pay benefits under this provision when they are paid under any other benefit in Section E.

(c)   Alopecia - We will pay the actual expenses for a wig or hairpiece not to exceed a lifetime maximum of $75 if you experience hair loss as a result of your radiation therapy treatment. The benefit is not payable when it has been paid under Item 12(c) in this section.

12. CHEMOTHERAPY - IN OR OUT OF HOSPITAL

(a)   Treatments - We will pay the actual charges up to the calendar year maximum shown in the Policy Schedule for cancericidal chemical substances including their administration. Such cancericidal chemical substances must be approved by the United States Food and Drug Administration. They must also be administered by or under the direction of a Physician. Under this provision we will not pay related expenses for Prescribed medications, physical exams, checkups, laboratory or diagnostic tests, treatment consultations and planning, or any similar such expenses.

(b)   Associated Expenses: We will pay the actual charges not to exceed $250 per calendar year for the following chemotherapy related expenses: Prescribed medications for side effects, treatment consultations and planning, physical exams, checkups, and laboratory or diagnostic tests. We will only pay for expenses incurred for the items listed when such expenses have been submitted to us and authorized by a Physician. Transportation expenses are not included as associated expenses. We will not pay benefits under this provision when they are paid under any other benefit in Section E.

(c)   Alopecia - We will pay the actual expense for a wig or hairpiece not to exceed a lifetime maximum of $75 if you experience hair loss as a result of your chemotherapy treatments. This benefit is not payable when it has been paid under Item 11(c) in this section.

13. EXPERIMENTAL TREATMENT

We will pay the Usual and Customary charges for experimental or investigational treatments of Cancer not to exceed $4000 per calendar year. This policy defines experimental or investigational treatment to be: (a)  Drugs or chemical substances approved by the United States Food and Drug Administration for the experimental use on humans; and (b)  surgery or therapy endorsed by either the National Cancer Institute or the American Cancer Society for experimental studies.

Examples of such treatments which meet our definition are:

(a)   Experimental drugs or chemicals;

(b)   Immunotherapy;

(c)   Hyperthermia;

(d)   Irradiated Cell Vaccine.

The following restrictions and limitations shall apply to this benefit:

(a)   The maximum benefit for all forms of experimental treatments shall not exceed $4000 per calendar year in the aggregate; and

(b)   experimental treatment must be received in a Hospital in the United States or in one of its territories; and

(c)   your attending Physician has authorized the treatment.

OD1497820

14. **BLOOD, PLASMA, AND BLOOD COMPONENTS**

We will pay the actual charges up to the calendar year maximum shown in the Policy Schedule while you are Hospital Confined or for Outpatient treatment:

(a) blood, plasma, and blood components;

(b) the administration of (a);

(c) transfusions;

(d) processing and procurement;

(e) crossmatching.

We will not pay for the cost of blood, plasma, or blood components that is/are replaced by donors. We will not pay any benefits related to the administration of chemotherapy under this provision.

15. **PHYSICAL THERAPY, SPEECH THERAPY**

We will pay $25 per therapy session, limited to one session per day, for:

(a) Physical therapy treatments given by a licensed Physical Therapist at:  An Institute of Physical Medicine and Rehabilitation, a Hospital, or your home; and

(b) speech therapy given by a licensed Speech Pathologist/Therapist.

Physical therapy or speech therapy must be given on an Outpatient basis; unless, the primary purpose of your Hospital confinement is for treatment of Cancer other than with physical therapy or speech therapy. The lifetime maximum benefit is $1000.

16. **EXTENDED CARE FACILITY**

We will pay $40 per day when you are confined in an Extended Care Facility after a period of Hospital Confinement. Confinement must begin not later than 14 days after such confinement.  The maximum number of days of confinement shall not exceed the number of days in the last period of Hospital confinement.

17. **BONE MARROW DONOR'S EXPENSES**

If you undergo a bone marrow transplant we will pay the following expenses incurred by your donor:

(a) The actual expense of roundtrip transportation by Common Carrier to the Hospital where the transplant is performed; and

(b) the actual charges not to exceed $1000 for medical expenses, including any Hospital charges, directly related to the transplant; and

(c) the actual expenses for lodging and meals not to exceed $75 per day when the donor is asked to remain near the Hospital after the transplant for the possible donation of additional blood components.

Benefits under this provision do not apply if you donate bone marrow to yourself. We will not pay any benefits under Items 18(c) or 19 for transportation or lodging expenses incurred by a donor who is an Immediate Family Member of yours. Items (a) and (c) above are not payable if the donor lives in the same county in which the transplant is performed.   The maximum number of days for which we will pay benefits under Item (c) above shall  not exceed 21 per transplant.    We require receipts for all expenses incurred and submitted for payment under this provision.   We will not pay any medical expenses under item (b) above which are provided free of charge.

18. **TRANSPORTATION**

If your prescribed treatment is not available locally, we will pay your transportation expenses to the nearest non-local Hospital in the United States providing such treatment.    Our payments for such transportation expenses will be as follows:

(a) Your actual round trip charge by Common Carrier; or

(b) a private vehicle allowance of $.35 per mile. Mileage is to be measured from your residence to the Hospital in which you are confined. We will accept your mileage figures if reasonable. We will not pay for mileage in excess of 700 miles round trip.

(c) the Insured or the Insured's Spouse's actual round trip expenses by a Common Carrier, to accompany a child who is a Covered Person under this policy and if confined in a non-local Hospital.

Non-local means a distance from your residence to the nearest Hospital which provides your prescribed treatment in excess of 50 miles. We will only pay this benefit once per Period of Hospital Confinement in a non-local Hospital. We will not pay for: Visits to a Covered Person receiving treatment (other than as indicated in (c) above) or Outpatient:  Treatments, checkups, or tests of any kind.

19. **FAMILY MEMBER LODGING AND TRANSPORTATION**

We will pay the following expenses for one adult member of your Immediate Family to be with you when you are confined in a non-local Hospital in the United States:

(a) Lodging expenses at a motel, hotel or other accommodations acceptable to us not to exceed $40 per day payable for the number of days you are Hospital Confined. The maximum benefit for any one Period of Hospital Confinement shall not exceed $2400; and

(b) the actual round trip fare by Common Carrier to the city in which you are Hospital Confined. We will only pay this benefit once per Period of Hospital Confinement in a non-local Hospital.

These benefits are payable when your prescribed treatment is not available locally and non-local Hospital confinement is authorized by your attending Physician.  Non-local means a distance from your residence to the nearest Hospital which provides your

prescribed treatment in excess of 50 miles. In addition, the following restrictions apply:

(a) Benefits are not payable if the adult lives in the same county in which you are Hospital Confined; and

(b) We will not pay any transportation expenses under this provision when Item 18(c) is paid for the same confinement.

20. OUTPATIENT POSITIVE DIAGNOSTIC TESTING

We will pay $300 for any diagnostic tests (excluding biopsies) performed to: Detect, support, or confirm Positive Diagnosis. Each test must be performed by or under the direction of a Physician. Positive Diagnosis must be made no more than 90 days after a test is performed. Our maximum payment per Positive Diagnosis shall not exceed $300. This benefit is not payable for recurring Cancers.

21. OUTPATIENT SURGERY

We will pay the following benefits for surgery performed at an Ambulatory Surgical Facility or at a Hospital when you are an Outpatient:

(a) for a biopsy 150% of the surgical fee as determined by Item 3(b) under "Diagnostic Tests" in this section; and

(b) for surgery and post operative care 150% of the surgical fee as determined by Item 4, "Surgery" in this section; and

(c) for anesthesia not to exceed 25% of the benefit payable under Items (a) or (b) above. Anesthesia must be given by or under the direction of an Anesthesiologist; or by an Anesthetist under the direction of a Physician; and

(d) $250 for: Drugs, medicines, and laboratory tests (otherwise not payable under any of the other benefits in this section) performed on an Outpatient basis and directly related to your surgery and/or biopsy. Such expenses must be incurred not more than 30 days before or after the surgery and/or biopsy; and

(e) $60 for one visit by your Attending Physician on the day surgery and/or biopsy is performed (when such Physician is not the surgeon who performed the surgery and/or biopsy).

If a biopsy is performed with another surgical procedure through the same incision we will only pay for the procedure having the highest benefit as determined by Items (a) and (b) above.

We will pay benefits under this provision for Skin Cancer upon which Positive Diagnosis is made, removed at a Physician's office or other licensed medical facility.

If you are admitted to a Hospital within 30 days following Outpatient surgery (excluding biopsies) other than due to: complications of the surgery or for reasons totally unre-lated to the surgery: we will pay benefits as if you were Hospital Confined for the surgery and the benefits for surgery and all other charges related to the surgery under this provision shall be null and void.

22. SKIN CANCER

We will pay $200 per diagnosis for the removal o. Skin Cancer by a Physician. We will accept a writter summary of the clinical diagnosis by a Physician whc is not a Pathologist. This benefit is payable only when Skin Cancer is removed on an Outpatient basis. This benefit is paid in lieu of any of the benefits under: Item 20, "Outpatient Positive Diagnostic Testing", or Item 21, "Outpatient Surgery"; or any other benefits payable on an Outpatient basis, in this section. If a Positive Diagnosis is made of the Skin Cancer, benefits will be paid according to the other applicable benefits in this policy. Our maximum payments during any one calendar year is $400.

23. AMBULANCE

We will pay the actual charges by a licensed professional ambulance service up to $2,000 per trip for:

(a) Your transportation to a Hospital in which you are admitted; and

(b) your transportation from a Hospital from which you have been released to a different Hospital in which you are admitted.

Ambulance transportation in excess of 100 miles from your point of origin must be to the nearest Hospital which provides your necessary medical treatment.

24. HOSPICE CARE

We will pay $75 per day of confinement in a Hospice Center; or $75 per visit at your home by a Hospice Team limited to one visit per day. Our payments will be based on the following conditions being met:

(a) You have been given a prognosis as being terminally ill with an estimated life expectancy of 6 months or less; and

(b) we have received a written summary of such prognosis by your attending Physician.

We will not pay this benefit while you are Hospital Confined. The lifetime maximum benefit of this pro- vision is $7500.

25. GOVERNMENT OR CHARITY HOSPITAL

We will pay the following benefits when you are confined or treated in a government or charity Hospital:

(a) $200 per day for each day of confinement; for the first ten (10) days; and

(b) $125 per day for each day of confinement beginning on the 11th day until you are released; and

(c) $75 per treatment, limited to one (1) treatment per day, for Outpatient radiation therapy or chemotherapy at such a Hospital.

10

Confinement must be in a Hospital owned or operated by the United States Government: or a Hospital that does not charge you for its services. Continued confinement must be primarily for the treatment of Cancer. Benefits under this provision are paid in lieu of all other benefits in this policy when you are confined or treated in a government or charity Hospital.

26.  VITAL ORGAN AND BONE MARROW TRANSPLANT BENEFIT

If, during a Hospital Confinement, you require a Bone Marrow transplant or the replacement of a cancerous Vital Organ by transplant, we will pay you a lump sum indemnity benefit of $30,000. This benefit shall be payable in lieu of all other benefits under this policy and any attached riders. Once this benefit is payable, we will not pay for:

(a)  any losses incurred during such Hospital Confinement starting 5 days prior to the date of the transplant and thereafter until your release from the Hospital.

(b)  any losses incurred for subsequent Hospital Confinements resulting from the transplanted Vital Organ or Bone Marrow or any complications resulting therefrom; and

(c)  any losses incurred for outpatient treatment resulting from the transplanted Vital Organ or Bone Marrow or any complications resulting therefrom.

This benefit shall be payable for each Bone Marrow transplant or replacement of a cancerous Vital Organ by transplant provided the transplant surgery is done in separate Hospital Confinements.

27.  EXTENDED BENEFITS

If you have been continuously confined to a hospital for the definitive treatment of Cancer, except for any Hospital Confinement covered by the Vital Organ and Bone Marrow Transplant Benefit, for a period of seventy-five (75) consecutive days, we will pay the usual and customary Hospital charges for: Hospital room and board, drugs, medicines, supplies, laboratory work, diagnostic tests, and any other medically related Hospital charges, beginning with the seventy-sixth (76th) day of continuous confinement until discharge from the Hospital. This benefit is paid in lieu of all other benefits under this policy, including any riders attached hereto, except for Surgery and Anesthesia which will continue to be payable under their applicable benefit provisions. This benefit is not paid for any charges incurred during any Hospital Confinement covered by the Vital Organ and Bone Marrow Transplant Benefit.

## SCHEDULE OF OPERATIONS

| Procedure | Maximum Amount |
|---|---|
| **EYE AND EAR** | |
| Biopsy of external ear | 60.00 |
| Biopsy of cornea | 70.00 |
| Iridectomy | 900.00 |
| Mastoidectomy | |
| (a)  complete | 1200.00 |
| (b)  radical | 1600.00 |
| Iridectomy with cylectomy | 1600.00 |
| **HEAD, NECK & SPINE** | |
| Oropharynx biopsy, excisional | 70.00 |
| Thyroid biopsy, needle | 100.00 |
| Laryngoscopy with biopsy | 300.00 |
| Pharyngectomy without radical neck dissection | 1050.00 |
| Laryngectomy | |
| (a)  subtotal, with bilateral node dissection | 1150.00 |
| (b)  total, with radical neck dissection | 1850.00 |
| Adrenalectomy, partial or complete | 1500.00 |
| Thyroidectomy | |
| (a)  subtotal, with limited neck dissection | 1700.00 |
| (b)  total, with radical neck dissection | 2200.00 |
| Laminectomy for Intraspinal Malignancy | 2300.00 |
| Excision of Malignant Brain Tumor | |
| (a)  All tumors except meningioma | 2500.00 |
| (b)  Meningioma | 2900.00 |
| Hemispherectomy | 3000.00 |

| Procedure | Maximum Amount |
|---|---|
| **SKIN AND ORAL** | |
| Biopsy | |
| (a)  Skin surface | 60.00 |
| (b)  Mouth or tongue | 90.00 |
| Excision of malignant lesion | |
| (a)  skin surface | 350.00 |
| (b)  lip or mouth with resection | 800.00 |
| Glossectomy | |
| (a)  less than one-half of tongue | 650.00 |
| (b)  complete or total | 1400.00 |
| (c)  with radical neck dissection | 1700.00 |
| **THORAX** | |
| Breast biopsy | |
| (a)  needle | 60.00 |
| (b)  incisional, unilateral | 250.00 |
| Lung biopsy, needle | 90.00 |
| Thoracoscopy with biopsy | 300.00 |
| Bronchoscopy with biopsy | 300.00 |
| Lumpectomy, unilateral | 450.00 |
| Mastectomy, simple | |
| (a)  unilateral | 650.00 |
| (b)  bilateral | 900.00 |
| Mastectomy, radical including axillary lymph nodes, unilateral | 1400.00 |
| Lobectomy of Lung, total or segmented | 1850.00 |
| Pneumonectomy | 2100.00 |

12

If this option is elected, we will pay a disability benefit equal to $400 per day subject to the deductible in Section D, while you are Hospital Confined or confined in an Extended Care Facility.

In addition, the election of this option is subject to the following conditions:

1. You must request to elect this option before any payments from the other benefits of this policy are made for each Cancer that is Positively Diagnosed; and

2. you must provide proof acceptable to us that you have other health insurance in force which contains a reduction, or coordination of benefits clause.

Once elected, the benefits of this provision are in lieu of all other benefits in this policy and any attached riders for Cancer.

## SECTION H - EXCEPTIONS AND LIMITATIONS

1. This policy provides benefits only for Cancer defined in Section A, "Definitions", which is Positively Diagnosed while this policy is in force, subject to the "waiting period" (see Number 2, below). It does not provide benefits for any other illness or disease, except as provided in number 3 below.

2. This policy contains a 30 day "waiting period". This means that no benefits are provided for any person diagnosed with Cancer during the first 30 days from the Effective Date of such person's coverage.

3. We will only pay for loss as a direct result of Cancer, or any condition or disease directly caused, aggravated, complicated or affected by Cancer or the treatment of Cancer, including direct extension, metastatic spread or recurrence. Proof of Positive Diagnosis must be submitted to us for each new claim (except as stated under Section E, item 22, "Skin Cancer").

4. We may reduce or deny a claim or void the policy for loss incurred by a Covered Person: (a) during the first 2 years from the Effective Date of such coverage for any misstatements in the application which would have materially affected our acceptance of the risk; or (b) at any time for fraudulent misstatements in the application.

5. Under no condition will we pay any benefits for losses or medical expenses incurred prior to the end of the 30 day "waiting period".

## SECTION I - CONTINUATION AND TERMINATION (END) OF COVERAGE

1. CONTINUATION

    (a) We will endorse this policy to continue coverage and waive premiums for each eligible dependent child to their 18th birthday if this policy is: in full force as a Single Parent Family Policy at your (the Insured's) death; or in full force as a Family Policy if you (the Insured) and your Spouse die at the same time.

    At that time the coverage may be converted according to the applicable provisions under

Item 1, SECTION J, "Conversion of Individual Coverage". A Covered Person not eligible for

the continued coverage may convert his or her coverage according to the applicable provisions

under Item 1, SECTION J, "Conversion of Individual Coverage".

    (b) If this is a Family Policy the Insured's Spouse shall become the Insured effective at the Insured's death. We will convert this policy to a Single Parent Family Policy or an Individual

Policy, whichever applies, according to the provisions under Item 3, SECTION J "Conversion of a Family Policy or a Single Parent Family to an Individual Policy; Conversion of a Family Policy to a Single Family Policy".

2. TERMINATION

    (a) Under a Family Policy, your (the Insured's) Spouse's coverage will end upon the earlier of your Spouse's:

    i. Death; or

    ii. valid decree of divorce from you; or

    iii. end of coverage by reason of your request, effective upon our receipt of your written notice

    (b) Under a Single Parent Family Policy, or a Family Policy, coverage will end on a Dependent Child at the earlier of the child's:

    i. death; or

    ii. marriage; or

    iii. attainment of age 19; or

    iv. attainment of age 25 if a full time student at a regular educational institution; or

    v. written notice to end coverage effective upon receipt by us.

    (c) Coverage on the Insured will end upon the earlier of the Insured's:

    i. death; or

    ii. failure to pay the Renewal Premium before the grace period ends; or

    iii. written notice to end coverage, effective upon receipt by us.

    (d) Coverage will end on each Covered Person if the Renewal Premium is not paid before the grace period ends.

Termination under the conditions: (a) (i) or (ii); (b) (i), (ii), or (iii), or (iv), or (c) (i) or (ii) will be on the next Renewal Date following the occurrence of the condition. If you fail to notify us promptly of the above conditions, we will refund the applicable portion of the premium at the time we are notified.

may be made later than as specified above when indicated on your written notice. However, any such later termination date will be on a Renewal Date.

Coverage will not end on a Covered Person who is an unmarried dependent child unable to self-sustain employment by reason of mental retardation or physical handicap (who became so unable prior to the attainment of the limiting age for eligibility under this policy), and who is chiefly dependent upon you (the Insured) for support and maintenance. Notice of such inability and dependency must be furnished to us by the policyholder. If such incapacity or dependency ceases thereafter, the policyholder shall so notify us.

"Dependent on other care providers" means requiring a Community Integrated Living Arrangement, group home, supervised apartment, or other residential services licensed or certified by the Department of Mental Health and Development Disabilities, the Department of Public Health, or the Department of Public Aid.

Termination of the policy will be without prejudice to any continuous loss which commenced while the policy was in force.

# SECTION J - CONVERSION PRIVILEGES

1. . CONVERSION OF INDIVIDUAL COVERAGE

   (a) If this is a Single Parent Family Policy or a Family Policy, we will issue a new policy to a child who is a Covered Person. The new policy will be issued without Evidence of Insurability. It is subject to the child being a Covered Person under this policy when his or her coverage ends.

   (b) If this is a Family Policy and the Insured and the Insured's Spouse dissolve their marriage by valid decree of divorce, we will issue a new policy to the Spouse. The new policy will be issued without Evidence of Insurability. It is subject to the Insured's Spouse being a Covered Person at final decree of divorce.

Under either (a) or (b) above the new policy will be issued on a form then available from us that is most like this policy. Benefits under the new policy shall not exceed those under this policy unless Evidence of Insurability is provided. Covered Persons (excluding the Insured) under this policy may become Covered Persons under the divorced Spouse's new policy as the Insured and the divorced Spouse's new policy as the Insured and the divorced Spouse may elect; however, in no case will any Covered Person be covered under both this policy and the divorced Spouse's new policy at the same time.

The conversion privileges described in Items (a) and (b) above are subject to the following conditions:

   (a) Application for the new policy must be made not more than 31 days after coverage ends under Item (a), and before coverage ends under Item (b); and

   (b) the premium for the new policy will be at the rates for the Class to which the Covered Person belongs at such Covered Person's age, for the policy form, and the amount of insurance

policy; and

   (c) any condition specifically excluded from coverage in this policy will also be excluded under the new policy unless we decide otherwise when the new policy is issued; and

   (d) benefits payable to a Covered Person under the new policy will be reduced by benefits payable under this policy after coverage under this policy ends; and

   (e) this policy must be in force on the Conversion Date.

2. . CONVERSION OF AN INDIVIDUAL POLICY TO A SINGLE PARENT OR A FAMILY POLICY; CONVERSION OF A SINGLE PARENT FAMILY POLICY TO A FAMILY POLICY:

If this is an Individual Policy, the Insured may convert it to a Single Parent Family Policy or a Family Policy with the addition of: Eligible family members by endorsement; or when a child of the Insured's is born. If this is a Single Parent Family Policy, the Insured may convert it to a

Family Policy with the addition of the Insured's Spouse by endorsement. Such conversions are subject to the following conditions:

   (a) An application is submitted to us providing Evidence of Insurability for each eligible family member applying for coverage (if two or more are applying at the same time one application may be submitted); or in the case of the Insured's newborn child written notice is submitted to us not more than 31 days after the child's birth; and

   (b) the required premium is paid for a Single Parent Family Policy or a Family Policy, whichever applies.

We will convert this policy by endorsement to either a Single Parent Family Policy or a Family Policy, whichever applies, effective at the Conversion Date. Conversion is subject to the payment of all due Renewal Premiums to the Conversion Date.

3. CONVERSION OF A FAMILY POLICY OR A SINGLE PARENT FAMILY POLICY TO AN INDIVIDUAL POLICY; CONVERSION OF A FAMILY POLICY TO A SINGLE PARENT FAMILY POLICY:

If this is a Family Policy or a Single Parent Family Policy, the Insured may convert it to an Individual Policy if any of the events under Item 2, SECTION I, "Termination", causes coverage to end on a Covered Person. This must result in the Insured becoming the only Covered Person under this policy. If this is a Family Policy, the Insured may convert it to a Single Parent Family Policy if any of the events under Item 2(a), SECTION I, "Termination", causes coverage to end on the Insured's Spouse. We will convert this Policy by endorsement and change the Renewal Premium to that for an Individual Policy or a Single Parent Family Policy, whichever applies, effective at the Conversion Date. Conversion is subject to the payment of all due Renewal Premiums to the Conversion Date and our receipt of written notice to convert this policy.

LPC01AR

0D1497820

14

If possible, notice should be sent in advance of the Conversion Date. However, if we receive written notice after the Conversion Date, we will make the conversion retroactive to that date. If a conversion is retroactive, we will refund to the Insured the difference between: All Renewal Premiums paid for this policy after the Conversion Date, and the Renewal Premiums we would have charged had we received written notice on or before the Conversion Date. If a refund of premium is requested when exercising a conversion privilege, written notice must include a copy of a document verifying that coverage has ended for the Covered Person (e.g. death certificate, divorce decree, birth certificate, etc.) making this policy eligible for conversion.

# SECTION K - GENERAL PROVISIONS

1. **ENTIRE CONTRACT CHANGES**

This policy, including the application, and any endorsements or attached papers, is the entire contract. No change in this policy will be effective until approved by a company officer. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions.

2. **TIME LIMIT ON CERTAIN DEFENSES**

After two (2) years from the date on which a person becomes a Covered Person under this policy, no misstatements (except fraudulent misstatements), made in the application for coverage of such person shall be used to void the policy or to deny a claim for loss incurred or disability commencing after the expiration of such two (2) year period.

3. **FRAUDULENT MISSTATEMENT**

If a fraudulent misstatement is made in the application for this policy we may reduce or deny any claim or void the policy at any time.

4. **GRACE PERIOD**

A grace period of thirty-one (31) days will be granted for the payment of each Renewal Premium falling due after the initial premium. During the grace period the policy will remain in force.

5. **REINSTATEMENT**

If the Renewal Premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by an agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy. If we or our agent requires an application, the Insured will be given a conditional receipt for the premium. If the application is approved, the Policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt, unless we have previously written the Insured of its disapproval. The reinstated policy will cover only losses resulting from Cancer that is Positively Diagnosed more than 10 days after the date of reinstatement. In all other respects, your rights and our rights will remain

6. **NOTICE OF CLAIM**

Written notice of claim must be given to us within sixty (60) days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of you to our Administrative Office in Little Rock, Arkansas or to our agent shall be deemed notice to us. The notice should include the name of the Insured and the policy number.

7. **CLAIM FORMS**

When we receive the notice of claim, we will send the Insured such forms as are usually furnished by us for filing proof of loss. If such forms are not sent within ten (10) days you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss with the time stated in the "Proofs of Loss" provision, in this section.

8. **PROOFS OF LOSS**

Written proof of loss must be given to us within ninety (90) days after the date of such loss. If it was not reasonably possible to give written proof in the time required, we shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the time specified, unless the claimant was legally incapacitated.

9. **TIME PAYMENT OF CLAIMS**

Indemnities payable under this policy for any loss will be paid as soon as we receive proper written proof of loss.

10. **PAYMENT OF CLAIMS**

Benefits are payable to the insured. Any accrued benefits unpaid at such insured's death will be paid to the spouse of such insured, if living, otherwise to the estate of such insured. If benefits are payable to the insured's estate or a beneficiary who cannot execute a valid release, we can pay benefits up to $1,000.00 to one related to the insured or beneficiary by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payments made in good faith.

We may pay all or a portion of any indemnities provided for health care services to the provider, unless the insured directs otherwise in writing by the time proofs of loss are filed. The Company cannot require that the services be rendered by a particular provider.

11. **PHYSICAL EXAMINATION AND AUTOPSY**

We, at our expense, have the right to have the covered person examined as often as reasonably necessary while claim is pending. We may also have an autopsy performed if necessary, unless prohibited by law.

## 12. LEGAL ACTIONS

No action at law or in equity shall be brought to recover on this policy within sixty (60) days after written proof of loss has been furnished in accordance with requirements of this policy. No such action may be brought after five (5) years from the time written proof of loss is required to be given.

## 13. CONFORMITY WITH STATE STATUTES

Any provision of this policy which, on its Effective Date, is in conflict with the laws of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such laws.

## 14. TERMINATION OF COVERED PERSON

Upon the termination of coverage of a Covered Person (see SECTION J) our acceptance of premium shall be considered as premium for only the Insured and the remaining Covered Persons.

## 15. OTHER INSURANCE WITH THIS INSURER

If the Insured has more than one policy like this policy with us, only one policy chosen by the Insured, the beneficiary or the Insured's estate, as the case may be, will be effective. We will refund all premiums paid for all other such policies.

## 16. CHANGE OF BENEFICIARY

Unless the Insured makes an irrevocable designation of beneficiary, the right to change beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of the policy or to any change of beneficiaries, or to any other changes in this policy.

## 17. TERM OF COVERAGE

(a)  The initial term of this Policy starts on the Effective Date at 12:01 a.m. Standard Time at the place of residence. It ends 12:01 a.m. on the same Standard Time on the First Renewal Date.  (b)  Each time this policy is renewed the new term begins and the old term ends.  If a Renewal Premium is not paid when it is due the policy will remain in force during the grace period.

## 18. POLICY SCHEDULE

The  POLICY  SCHEDULE  page  and  the information thereon is a part of this policy to the same extent as if it preceded the execution clause.

## 19. ASSIGNMENT

The Insured may assign benefits under this policy. We assume no responsibility for the validity or effect of any assignment of this policy or any interest in it.

## 20. UNPAID PREMIUMS

Upon the payment of a claim under this policy, any premium then due and unpaid may be deducted from such payment.

## 21. CLERICAL ERROR

A clerical error by us shall not invalidate insurance otherwise in force, nor continue insurance otherwise not validly in force.

## 22. NONPARTICIPATION

This policy shall not participate in the distribution of our surplus.

## 23. REFUND OF UNEARNED PREMIUM

You may cancel this policy at any time by written notice delivered or mailed to us, effective upon receipt of the notice or on a later date as specified. In this event of cancellation or death of the Insured, we will promptly return the unearned portion of any premium paid.  Cancellation shall be without prejudice to any claim originating prior to the effective date of cancellation.

16
This page intentionally left blank

# INDEX

Insuring Clause . . . . . . . . . . . . . . . . . . . . . . .    1

Policy Schedule . . . . . . . . . . . . . . . . . . . . .    2

Renewability Clause . . . . . . . . . . . . . . . . . . .    1

Ten-Day Right to Examine Policy . . . . . . . .    1

SECTION A
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . .    3-5

SECTION B
Family Member Eligibility . . . . . . . . . . . . . .    5

SECTION C
Beginning of Benefit Payments . . . . . . . . . . .    5

SECTION D
Deductible. . . . . . . . . . . . . . . . . . . . . . . . .    5

SECTION E
Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6-10
Surgical Schedule . . . . . . . . . . . . . . . . . . . . .    10-11
SECTION F
Waiver of Premium Benefit . . . . . . . . . . . . .    11

SECTION G
Optional Cancer
Disability Compensation . . . . . . . . . . . . . . .    11-12

SECTION H
Exceptions and Limitations . . . . . . . . . . . . .    12

SECTION I
Continuation and Termination
(End) of Coverage . . . . . . . . . . . . . . . . . . . . .    12-13

SECTION J
Conversion Privileges . . . . . . . . . . . . . . . . . .    13-14

SECTION K
General Provisions . . . . . . . . . . . . . . . . . . . . .    14-15

Please examine your policy and the attached copy of the application carefully. Contact us at our Administrative Office in Little Rock, Arkansas, if you desire additional service or information.

If you change your address, please notify us giving your full name and policy number.

Your policy is a valuable asset. For our own protection, let us advise you regarding any suggestion to terminate this policy.

LPC01AR

17

0D1497820

**APPLICATION TO:**
Home Office: Cedar Rapids, Iowa

## LIFE INVESTORS INSURANCE COMPANY OF AMERICA

Administrative Office: Little Rock, Arkansas

☐ Mr. ☐ Mrs. ☑ Miss ☐ Ms.

| Applicant | Diane Pipes | Birthdate 11 13 49 | Social Security Number 429 194 14790 |
|---|---|---|---|

Home Address 1647 Jackson 35 Newport AR 72112   Home Phone (870) 217-0444
        No.    Street    City    State    Zip

Spouse N/a   DOB __/__/__   Dependent Children ☐ Yes ☑ No
        First    Middle    Last

Business Name A.D.C. - McPherson   Business Phone (870) 523-2639

Business Address 308 Pinebluff Hwy, Newport, AR 72112   Occupation Secretary
        No.    Street    City    State    Zip

### ☑ CANCER POLICY, RIDERS AND INTENSIVE CARE

| | | Plan* | Benefit | Deductible | Premium |
|---|---|---|---|---|---|
| A. | Cancer Policy Hospital Daily Benefit.............. | ☑ I ☐ SPF ☐ TAF ☐ F | 100 | | 16.30 |
| | Radiation / Chemo / Blood yr./max. $5,000, $10,000, $15,000, $20,000, $25,000 | | | | |
| B. | Specified Disease Rider Hospital Daily Benefit.................. | ☐ I ☐ SPF ☐ TAF ☐ F | | | |
| C. | Home Recovery Rider Daily Benefit.............. | ☐ I ☐ SPF ☐ TAF ☐ F | | | ............ |
| D. | Initial Diagnosis Rider................................... | ☐ I ☐ SPF ☐ TAF ☐ F | | | ............ |
| E. | Intensive Care Policy / Rider Daily Benefit.............. | ☐ I ☐ SPF ☐ TAF ☐ F | | | ............ |
| F. | Heart Disease, Heart Attack & Stroke Daily Benefit Rider ...... | ☐ I ☐ SPF ☐ TAF ☐ F | | | ............ |
| G. | Heart Disease, Heart Attack & Stroke Home Recovery Rider ... | ☐ I ☐ SPF ☐ TAF ☐ F | | | ............ |
| H. | Vital Organ Transplant Rider ...................................... | ☐ I ☐ SPF ☐ TAF ☐ F | | | ............ |
| | | | | Sub-Total | 16.30 |
| I. | Return of Premium Rider.............................. | ☐ I ☐ SPF ☐ TAF ☐ F | | | |

(*Plan: I = Insured; SPF = Single Parent Family; TAF = Two Adult Family; F = Family)   **Total Policy Premium $** 16.30

### ☑ HEART DISEASE, HEART ATTACK, STROKE POLICY

| | | Plan | Benefit | Deductible | Premium |
|---|---|---|---|---|---|
| A. | Heart Policy Daily Benefit........................ | ☑ I ☐ SPF ☐ F | 100 | 1 Day | 13.20 |
| B. | Optional Rider(s)  Heart Disease, Heart Attack & Stroke Home Recovery Rider | ☐ I ☐ SPF ☐ F | | N/A | |
| C. | Vital Organ Transplant Rider | ☑ I ☐ SPF ☐ F | N/A | N/A | 1.50 |
| D. | ICU Rider / Policy | ☑ I ☐ SPF ☐ F | 200 | N/A | 3.70 |
| | | | | Sub-Total | 18.40 |
| E. | Return of Premium Rider.......................... | | | | |

**Total Policy Premium $** 18.40

### ☐ ACCIDENT POLICY AND RIDERS:

| | | Plan | Benefit | Premium |
|---|---|---|---|---|
| A. | Accident Policy.................................. | ☐ I ☐ S ☐ D | | |
| B. | Accident Only Disability Rider - Maximum Benefit Period (months)...... ☐12 ☐ 24 | | per month | |
| C. | Payroll Billing Accident & Sickness Disability Rider | | | |
| | 7 Day Elimination Period - Maximum Benefit Period (months)......☐12 ☐ 24 | | per month | |
| D. | Direct Billing Accident & Sickness Disability Rider | | | |
| | 14 Day Elimination Period - Maximum Benefit Period (months)......☐12 ☐ 24 | | per month | |
| E. | Return of Premium Rider.......................... | | Sub-Total | |

Beneficiary _____ Relationship _____
(The Applicant-Insured will be the beneficiary for Spouse and/or Dependent Children Coverage)   **Total Policy Premium $**
(*Plan: I = Insured; S = Spouse; D = Dependent Children)

### ☐ HOSPITAL INDEMNITY POLICY AND RIDERS:

| | | Benefit | Plan | Premium |
|---|---|---|---|---|
| A. | Hospital Benefit Package ...................... | ☐$50 ☐$100 ☐$150 ☐$200 | ☐ I ☐ SPF ☐ TAF ☐ F | |
| B. | Initial Hospital Benefit ...................... | ☐$200 ☐$400 ☐$600 ☐$800 (Payroll Only) | ☐ I ☐ SPF ☐ TAF ☐ F | |
| C. | Surgery & Anesthesia Rider (# of Add'l Units) ..... | ☐ I ☐ 2 ☐ 3 | ☐ I ☐ SPF ☐ TAF ☐ F | |
| D. | Physician's Office, Outpatient Emergency & ......... In-hospital Physician Visit Riders | ☐ $25 ☐ $___ | ☐ I ☐ SPF ☐ TAF ☐ F | |
| E. | Optional Rider: _____ | | ☐ I ☐ SPF ☐ TAF ☐ F | |

**Total Hospital Indemnity Premium $**

Premium Billing Mode: ☐ Monthly Bank Draft  ☐ Semi-Annual Direct  ☐ Annually Direct  ☑ Payroll Deduction
Group Number: 4164   Employee ID: 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   Sec. 125: ☐ Yes ☑ No
Group Name: State of Arkansas   **Total of all premiums** $ 34.70

Form LMDA01AR

i

| Section | HEALTH QUESTIONS | If "Yes", list person(s) to be excluded from that Section's Coverage |
|---|---|---|

**1. FOR ALL COVERAGE:**

Have you or anyone proposed for coverage been diagnosed or been treated by a member of the Medical Profession as having Acquired Immune Deficiency Syndrome ("AIDS"); "AIDS" related complex ("ARC"); or "AIDS" related conditions?............................  Yes ☐  No ☒  Person(s) _____

**2. FOR CANCER COVERAGE, INCLUDING RIDERS:**

A. Have you or anyone proposed for coverage ever been diagnosed as having or treated for any form of Internal Cancer, Skin Cancer or any malignancy?....................  ☐  ☒  Person(s) _____

B. Have you or anyone proposed for coverage undergone a biopsy or other diagnostic test within 30 days or are now scheduled for such to determine whether any form of cancer or malignancy exists? (Do not submit if "Yes") ....................  ☐  ☒  Person(s) _____

**3. FOR SPECIFIED DISEASE RIDER:**

Have you or anyone proposed for coverage ever been diagnosed as having or treated for: Adrenal Hypofunction (a.k.a. Addison's Disease), Amyotrophic Lateral Sclerosis (a.k.a. Lou Gehrig's Disease), Botulism, Brucellosis, Budd-Chiari Syndrome, Cystic Fibrosis, Diphtheria, Encephalitis, Histoplasmosis, Legionnaires Disease, Lupus Erythematosus, Malaria, Meningitis, Multiple Sclerosis, Muscular Dystrophy, Myasthenia Gravis, Osteomyelitis, Poliomyelitis (Polio), Q Fever, Reye's Syndrome, Rheumatic Fever, Rocky Mountain Spotted Fever, Sickle Cell Anemia, Tay Sachs Disease, Tetanus, Toxic Shock Syndrome, Trichinosis, Tuberculosis, Typhoid Fever, or Whooping Cough?............................  ☐  ☐  Person(s) _____

**4. FOR INTENSIVE CARE POLICY / RIDER:**

Have you or anyone proposed for coverage been diagnosed, treated, hospital confined or received medical advice from a Physician for a heart attack, heart disease, a heart condition or any heart abnormality?............................  ☐  ☒  Person(s) _____

**5. FOR HEART DISEASE, HEART ATTACK AND STROKE COVERAGE**

A. Within the past 10 years has anyone proposed for coverage been diagnosed, treated, received medical advice or taken prescribed medication for Stroke, or any disease, disorder, or abnormality of the brain, heart, or circulatory system (arteries, veins, lymph nodes, and vessels)?............................  ☐  ☒  Person(s) _____

B. Within the last 5 years has anyone proposed for coverage, been diagnosed, treated, received medical advice or taken prescribed medication for High Blood Pressure?............................  ☐  ☒  Person(s) _____

C. Within the past 5 years has anyone proposed for coverage, been diagnosed, treated, received medical advice or taken prescribed medication or used insulin for Diabetes?............................  ☐  ☒  Person(s) _____

**6. FOR ACCIDENT / DISABILITY COVERAGE**

A. Have you had a drivers license suspended or revoked within the past 3 years?............................  ☐  ☒

*Complete only if applying for any optional disability*

B. Do you work 25 or more hours per week with the employer listed on the first page of this application and is this your primary (full-time) occupation?............................  ☐  ☐

C. How long have you worked for your present employer?............................ _____

D. Have you lost any professional license(s) in the past year?............................ _____

E. Have you received or claimed disability benefits, or a pension for any injury, sickness, or impaired condition within the past 2 years?............................  ☐  ☐

*Complete only if applying for accident and sickness disability*

F. Have you been working 25 or more hours per week at your primary occupation for the last six months?............................  ☐  ☐

G. Have you been diagnosed by or received treatment from a member of the medical profession for cancer, heart or vascular disease, chronic obstructive pulmonary disease, renal disease or rheumatoid arthritis?............................  ☐  ☐

H. In the last year, have you received treatment in a hospital as an inpatient or outpatient or have you missed five consecutive days of work due to your sickness............................  ☐  ☐

*Complete only if applying for more than $700 a month disability*

I. What is your annual income for your full time job for this year?....$_____  *Verification must be provided with this application.*

**FOR HOSPITAL INDEMNITY COVERAGE**

A. Is anyone proposed for coverage currently confined in a hospital or nursing home, or has hospitalization been recommended by a physician?............................  ☐  ☐  Person(s) _____

B. Has anyone proposed for coverage been confined in a hospital or nursing home or treated on an outpatient basis within the last 24 months because of internal cancer, heart surgery, heart attack, congestive heart failure, vascular disease or chronic obstructive pulmonary disease; or been confined in a hospital or nursing home within the last 12 months for chronic liver disease, stroke, emphysema, sickle-cell anemia, asthma, chronic bronchitis or Parkinson's disease?............................  ☐  ☐  Person(s) _____

C. Has anyone proposed for coverage ever been treated or diagnosed as having Alzheimer's disease, senile dementia, systemic lupus, kidney failure or insulin dependent diabetes?....  ☐  ☐  Person(s) _____

D. List all health insurance you currently have in force or applied for.

m LMDA01AR

-2-

(Continued on next page)

v. Details of "Yes" answers to questions 1 through 7.

| Question # | Person(s) | Condition and Date of Last Treatment | Name and Address of Doctor or Hospital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## REPRESENTATION OF APPLICANT

I understand that the policy(ies) I am applying for will not cover any person who has attained age 65 prior to the Effective Date of the policy for intensive care, accident, heart and stroke, or hospital coverage.

I hereby certify that I have read or had read to me the completed application and that the statements are true to the best of my knowledge, information and belief and realize that any false statements herein which materially affect the acceptance of the risk or the hazard assumed may result in loss of coverage under the policy to which this application is attached.

I agree that the insurance applied for shall take effect on the date indicated below if the full premium is paid, provided that all persons proposed for coverage are acceptable in every respect under the Company's standard rate of premium and practices for the amount and plan of insurance applied for.

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, or the Medical Information Bureau that has knowledge of my health, or of my family's health, to give to LIFE INVESTORS INSURANCE COMPANY OF AMERICA any such information. A photographic copy of this authorization shall be as valid as the original.

### WARNING
**Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.**

## THE FOLLOWING QUESTIONS MUST BE ANSWERED:

1. I have received an outline of coverage (if required)........................................................☒ Yes ☐ No
2. Is the insurance applied for intended to replace any other health insurance presently inforce?...........☐ Yes ☒ No
   If "Yes", name of Company _____ Amount (if known) _____
3. Is anyone proposed for coverage covered by any Title XIX program (e.g. Medicaid)?....................☐ Yes ☒ No
   If "Yes", name(s): _____, who will be excluded from coverage.

Effective Date of Coverage:    ☐ Application Date (Payroll, Direct, and Bank Draft)
   ☒ Other 09 /01 /01 (Payroll Only) - See Underwriting Guidelines for Rules

Dated at _Newport, Arkansas_ (city/state) this _10th_ day of _July, 2001_ (month/year)

Signature of Owner/Applicant _Diane Pipes_    Signature of Spouse _____

Signature of Licensed Representative _Virginia C. Thomas_ (if medical history listed) Agent No. _SC 0053_ Date _7/10/01_

☐ Check here if adding to existing policy # _____

Form LMDA01AR

-3-