**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | | |
|---|---|---|
| DWIGHT PIPES, individually and as administrator of the estate of DIANE PIPES, and EARL LEE PURIFOY, and on behalf of all others similarly situated | * | |
| Plaintiffs | * | NO: 1:07CV00035 SWW |
| VS. | * | |
| LIFE INVESTORS INSURANCE COMPANY OF AMERICA | * | |
| Defendants | * | |

**ORDER**

Plaintiff Dwight Pipes ("Pipes') commenced this putative class action in state court against Life Investors Insurance Company of America ("Life Investors"), asserting claims for breach of contract and bad faith refusal to pay insurance claims. Pipes brings his claims individually and as administrator of the estate of Diane Pipes, his deceased wife. Life Investors removed the case to this federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). After removal, Pipes filed a second amended complaint adding Earl Lee Purifoy ("Purifoy") as a named plaintiff.

Pending before the Court is Plaintiffs' motion for class certification (docket entry #41), Life Investors' response in opposition (docket entry #68), and Plaintiffs' reply (docket entry #108). Also pending are Plaintiffs' first and second motions to compel (docket entries #45, #54), Life Investors' motions to compel (docket entry #64, #66), and the responses and replies to these

motions (docket entries #56, #58, #73, #74). After careful consideration, and for the reasons that follow, the motion for class certification will be denied and the motions to compel will be denied without prejudice.

**I.**

Life Investors issued Diane Pipes and Purifoy cancer only insurance policies that provide benefits for certain cancer-related treatments and expenses. After the policies were issued, Diane Pipes and Purifoy were diagnosed with cancer, and they submitted claims for benefits. Plaintiffs claim that Life Investors failed to pay the full amount of benefits due.

The benefit provisions at issue provide that Life Investors will pay the "actual charges" for specified cancer treatments.[1] The policies do not provide for the coordination of benefits, thus benefits are paid regardless of whether the insured has additional insurance that pays for the same treatment. Plaintiffs claim that Life Investors breached its obligation to pay "actual charges" benefits by calculating payments based on adjusted, rather than "actual charges." They take the position that Life Investors is required to pay "actual charges" equal to the amount billed by healthcare providers before any insurance discounts, insurance payments, or reductions or discounts of any kind.

The cancer only policies issued to Diane Pipes and Purifoy provide no definition for the term "actual charges." However, Plaintiffs allege that prior to April 1, 2006, Life Investors

---

[1]Life Investors' cancer only benefits vary depending on the type of treatment or procedure at issue. For example, in addition to "actual charges" benefits for specified cancer treatments, the cancer only policy provides benefits for scheduled, in-hospital surgery, according to a schedule that lists the maximum amount payable for specified procedures. Benefits for non-scheduled surgery, however, are the lesser of the "usual and customary charge" (a term that is defined in the policy) or an amount determined by the 1974 California Relative Value Schedule.

interpreted the term “actual charges” to mean the amount billed by healthcare providers before any deductions. They claim that after April 1, 2006, Life Investors changed its interpretation and began paying “actual charges” benefits based on the amount that healthcare providers ultimately accept as payment in full after certain deductions.

Life Investors maintains that it has always interpreted the term “actual charges” to mean the amounts paid to and accepted as payment by the healthcare provider. According to Connie Whitlock, Life Investors’ senior vice president, in 2004 Life Investors discovered that it had been paying claims in excess of “actual charges” because claims examiners were accepting statements from healthcare providers that contained “fictitious list prices” that did not represent the amount actually accepted by healthcare providers for medical services.[2] Docket entry #69, Attach. #9 (Whitlock Decl.). Whitlock testifies that in January 2006, Life Investors sent letters to its cancer only policyholders in Arkansas, notifying them that Life Investors was revising claim forms and procedures to ensure that the company received necessary information and documentation to support a claim for benefits based on actual charges.

The January 2006 letter to policyholders states in part: “When submitting a claim for these types of benefits, it is important to submit the appropriate information and documentation showing the actual charges being paid to and accepted as payment by the healthcare provider.” Docket entry #69, Attach. #10 (Ex. C to Whitlock Decl.).

**II.**

Plaintiffs seek to certify a declaratory/injunctive relief class, comprised of individuals

---

[2]Life Investors expert, Glenn Alan Melnick, Ph.D., testifies that healthcare providers inflate list prices as a means to negotiate real or actual charges. Docket entry #69, Attach. #13, ¶ 13.

identified as follows:

> All insureds and beneficiaries in Arkansas who are, or between April 1, 2006 until the present have been, insured by a Cancer Only Policy issued by Life Investors Insurance Company of America which provides for the payment of certain benefits based on "actual charges."

Docket entry #108, at 8. The relief sought for the declaratory/injunctive relief class includes (1) a declaration that "actual charges" as used in the cancer only policy means the amount billed by healthcare providers before any insurance discounts, insurance payments, or reductions or discounts of any kind, and (2) an injunction requiring Life Investors to cease "the wrongful acts complained of in the complaint regarding 'actual charges' and to re-institute its prior practice of paying 'actual charges' benefits equal to the amount billed by healthcare providers for covered treatments before any insurance discounts, other insurance payments, reductions or discounts of any kind." Docket entry #108 at 30

Plaintiffs also seek certification of a damages/restitution subclass, comprised of individuals identified as follows:

> All insureds and beneficiaries under Cancer Only Policies issued or sold by Life Investors Insurance Company of America, where: (i) such policies were issued in Arkansas; (ii) the policies provide for the payment of certain benefits based on "actual charges"; and (iii) benefits for "actual charges" claims were paid subject to insurance discounts, other insurance payments, reductions or other discounts, with a date of service for covered treatment after April 1, 2006.

*Id*. at 8. Plaintiffs generally describe the damages/restitution subclass as individuals who were paid improperly reduced "actual charges" benefits for medical treatment with a service date after April 1, 2006. By way of relief, Plaintiffs seek "restitution to policyholders who received less than the amount of 'actual charges' benefits to which they were properly entitled as a result of

Life Investors' incorrect interpretation of the term 'actual charges.'" *Id*. at 30. In addition to restitution, Plaintiffs seek penalties and punitive damages provided under Ark. Code Ann. § 23-79-208.

Federal Rule of Civil Procedure 23(a) lists four criteria for the maintenance of a class: (1) that the class be so numerous that joinder of all members is impracticable; (2) that common questions of law and fact exist among potential class members; (3) that claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that representative parties will fairly and adequately protect the interests of the class. In addition to the foregoing requirements, a proposed class must fall in to one of three categories provided under Rule 23(b).

***Numerosity***

Under Rule 23, a class action is warranted only if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In response to discovery requests, Life Investors reported that approximately 319 Arkansas cancer only policyholders have submitted claims for benefits related to services under the "actual charges" provisions for services rendered on or after April 1, 2006. Based on this information, Plaintiffs assert that the proposed damages/restitution class has at least 319 members. Additionally, Plaintiffs state that the declaratory/injunctive relief class includes "possibly as many as several thousand policyholders." Docket entry #108 at 16. Plaintiffs assert that this "good faith estimate" establishes the presumption of impracticability of joinder and satisfies the requirement of Rule 23(a)(1)." *Id*. at 17. With no opposition from Life Investors on this point, the Court will assume at this juncture that the numerosity requirement is satisfied.

***Commonality and Typicality***

The commonality and typicality requirements for class certification tend to merge and serve as "guideposts for determining whether under the particular circumstances maintenance of a class is economical and whether the named plaintiff's claims and the claims of the class are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. v. Falcon*, 102 S. Ct. 2364, 2371 n.13 (1982). Although the commonality and typicality requirements work together to assure judicial economy and adequate representation, they remain separate inquiries; the commonality requirement focuses on class claims, while the typicality requirement tests the relationship between the representative parties' claims and the class claims.

The commonality requirement does not require that every question of law or fact be common to every member of the class and may be satisfied, for example, "'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982)(quoting *American Finance Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)).

Plaintiffs submit that this case presents a single legal issue that is perfect for class certification: Under Arkansas law, whether Life Investors is required to pay "actual charges" benefits to cancer only policyholders equal to the amounts billed by their healthcare providers without regard to any insurance discounts, other insurance payments, or reductions or discounts of any kind. Because the record indicates that Life Investors has processed all "actual charges" benefits for services provided on or after April 1, 2006 in accordance with the January 2006 letter sent to Arkansas policyholders, the Court agrees that a common question of law exists.

The typicality requirement includes a quantitative aspect, related to the numerosity requirement, that obligates the class representative to demonstrate that there are other members of the putative class who have the same or similar grievances as the named plaintiffs. *See Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990)(citations omitted). Plaintiffs presume but present no quantitative evidence to show the existence of putative class members who share their grievances.

Typicality under Rule 23(a)(3) also has a qualitative aspect, related to the commonality and adequacy of representation requirements, that requires a named representative to be a member of the class he seeks to represent. Here, Pipes's status as a non-policyholder who has never been insured under a cancer only policy disqualifies him from membership in the proposed declaratory/injunctive relief class and, as more fully explained below, puts his interests at odds with all class members who are current policyholders. In sum, the Court finds that Plaintiffs have failed to show that the typicality requirement is met.

***Adequate Representation***

Adequacy of representation is perhaps the most important of all prerequisites to certification of a class action, *see Bishop v. Committee on Professional Ethics and Conduct*, 686 F.2d 1278, 1288 (8th Cir. 1982), and requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry serves, among other things, to uncover conflicts of interest between the named parties and the class they seek to represent.

Life Investors asserts that neither Pipes nor Purifoy qualify as adequate representatives of the proposed classes. According to Life Investors, Pipes has a conflict of interest with putative

class members who are current policyholders. The cancer only policies at issue state that they can be continued for life, provided that annual renewal premiums are paid on a timely basis. However, Life Investors reserves the right to increase premiums for all policies in a particular policy class.[3] Docket entry #41, Exs. ## 1, 2 at 1, 15. Life Investors maintains that it will be forced to increase premium rates for cancer only policies if it is required to pay benefits for “actual charges” based on phantom “list prices” that no person or entity is required to pay. Stephen B. Gwin, an actuary employed by an affiliate of Life Investors, predicts: “The millions of dollars in extra premium rate increases required by plaintiffs’ proposed method of paying benefits will make Life Investors’ [cancer only] policies less affordable or unaffordable for a larger number of policyholders, resulting in greater cancellation rates.” Docket entry #69, Attach. 101, ¶ 23. Life Investors also submits a declaration by Glenn Alan Melnick, Ph.D., a health economist, who opines that linking health insurance benefit payments to list prices on provider statements would likely result in “larger than market” premium increases. Docket entry #69, Attach. #13, ¶ 19.

Life Investors asserts that class members who are not current policyholders and seek only monetary relief, such as Pipes, will not be impacted by increased premiums and, rationally, are not concerned whether Life Investors raises the premium rates for current policyholders. In deposition, Pipes stated that in his view, the possibility of increased premium rates is not relevant to this lawsuit. And when asked whether other class members would want their premiums

---

[3]The cancer only policy defines the term “class” as follows: “Any group of individually insured persons under the same policy form who can be identified by the following characteristics: age at issue or original state of issue.” Docket entry #41, Exs. ## 1, 2 (Section A-Definitions).

increased, he replied: “They probably would not. It would be their choice.” Pipes Dep., at 189.

Named plaintiffs cannot fairly and adequately protect the interest of the class they seek to represent if the claim they pursue is antagonistic to the interests of other class members. *See Hansberry v. Lee,* 311 U.S. 32, 44-45, 61 S. Ct. 115, 119 (1940). The conflict identified by Life Investors goes to the very heart of this litigation because Pipes’s claim for monetary relief impacts the economic interests of current policyholders who want affordable insurance rates. The Court agrees that Pipes’s interests conflict with other class members and disqualify him as an adequate class representative.

Unlike Pipes, Purifoy is a current cancer only policyholder. Plaintiffs argue that the addition of Purifoy as a named plaintiff overcomes any concern regarding adequate representation for current policyholders. However, when asked in deposition whether he was concerned with how this case might affect the premium rates of other class members, Purifoy responded: “I ain’t going to be worried about that right now because, you know, worry about that later.” Docket entry #69, Attach. #66, Purifoy Dep. at 35. In fact, Purifoy stated that he thought it would be fair if other policyholders were faced with higher premium rates as a result of this lawsuit. *Id*. at 35- 37. Purifoy revealed that he believes that Life Investors singled him out and increased his premium rates after he was diagnosed with cancer and started claiming benefits. Purifoy demonstrated that he does not understand that Life Investors increases premiums across-the-board for all cancer only policyholders in a given class. Additionally Purifoy acknowledged that he sometimes uses the benefits he receives under his policy to defray his premium expenses, and he expressed no concern for policyholders who would have difficulty affording higher premiums. *Id*. at 157-58.

Purifoy also revealed that he did not know the types of benefit claims he had filed under his cancer only policy. He stated: "Actually it's hard for me to understand this stuff." Docket entry #69, Attach. #66, Purifoy Dep. at 59. Additionally, Purifoy's testimony indicates that he has no independent position regarding the central issue in this case: the meaning of "actual charges." *See* docket entry #69, Attach. #66, Purifoy Dep. at 82, 99.

Although Plaintiffs are entitled to rely on the expertise of counsel, a class representative is inadequate when he has so little knowledge of and involvement in the case that he is unable to adequately protect class interests against the possibly competing interests of attorneys. *See Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 61 (2nd Cir. 2000). Given Purifoy's lack of knowledge and understanding regarding basic policy terms and procedures and his lack of concern regarding the interests of other class members, the Court finds that he will not fairly and adequately protect the interests of the class, and he does not qualify as an adequate class representative.

***Rule 23(b)***

In addition to meeting the requirements under Rule 23(a), a party seeking class certification must show that the action is maintainable under Rules 23(b)(1), (2), or (3). In this case, Plaintiffs seek certification of the declaratory/injunctive relief class under Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) is intended to reach situations where a party has taken action or refused to take action with respect to the class, and final relief of an injunctive or declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. *See* Advisory Committee Note to the 1966 amendments to Fed. R. Civ. P. 23(b)(2). "The subdivision does not

extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." *Id*. Unlike Rule 23(b)(3), Rule 23(b)(2) contains no predominance or superiority requirements. However, because unnamed members have no right to notice or an opportunity to opt out of a class action certified under Rule 23(b)(2), "even greater cohesiveness generally is required than in a Rule 23(b)(3) class." *In re St. Jude Medical, Inc*., 425 F.3d 1116. 1121 (8th Cir. 2005)(quoting *Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998)).

The primary and ultimate relief sought by Plaintiffs is monetary, and the monetary relief sought is not incidental to the requested declaratory and injunctive relief. This finding alone precludes certification under Rule 23(b)(2). Furthermore, the declaratory and injunctive relief sought will it will likely impact premium rates and, perhaps, the ability of absent class members to retain cancer only insurance. Given the individual monetary interests at stake, the Court finds class cohesiveness lacking.

Plaintiffs seek certification of the proposed damages/restitution class "pursuant to Fed. R. Civ. P. 23(b)(3) as an alternative, or in conjunction with the Rule 23(b)(2) class." To certify a class action under Rule 23(b)(3), the Court must find that common questions predominate over any questions affecting only individual members and that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a

prima facie showing, then it becomes a common question." *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005)(quoting *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 136-40 (2d Cir. 2001)).

Life Investors asserts that the proposed damages/restitution class suffers from serious manageability problems because the calculation of "actual charges" under Plaintiffs' proposed definition of the term would devolve into a series of mini-trials for each plaintiff. As previously explained, Plaintiffs seek restitution or damages based on the "amount billed" by healthcare providers before any insurance discounts, insurance payments, or reductions or discounts of any kind. Life Investors has presented evidence showing that a determination of the "amount billed" for healthcare services is a complicated task that requires consideration of individualized evidence. *See* docket entry #69, Attach. #15, Chapman Dec.

Plaintiffs contend that "damages calculations . . are not an issue" because "Life Investors has easily accessible computerized information regarding the payment of 'actual charges' benefits, thus enabling the Court or the parties to ascertain the exact amount each class member is owed." Docket entry #108, at 34. However, Plaintiffs provide no evidence that Life Investors' computerized information contains readily accessible information regarding the "amount billed" by healthcare providers. In fact, the evidence presented indicates that Life Investors' computerized data contains "list prices" that do not necessarily represent the "amount billed." *See* docket entry #47, Ex. P-24, Byrne Dep. at 125-27.[4] Although individualized damages inquiries do not preclude class certification in all cases, the predominance requirement is not met

---

[4]Life Investors has presented examples of health provider "list prices" appearing on statements that specifically state: "This is not a bill, do not pay." *See* docket entry #69, Attach. #15, Ex. E.

where damage determinations will involve variations in proof for each plaintiff. The Court finds that Plaintiffs have failed to demonstrate that "actual charges" damages can be proven on a systematic, class-wide basis.

The prerequisites for certification of a class action are mandatory, and failure to establish just one bars class certification. In this case, the Court finds that Plaintiffs have failed to establish the prerequisites of typicality and adequate representation and have failed to show that the proposed classes fall within one of the Rule 23(b) categories. Accordingly, the motion for class certification will be denied.

**III.**

After moving for class certification, Plaintiffs filed two motions to compel answers to interrogatories and requests for production. Plaintiffs assert that the discovery sought is relevant to their individual claims and putative class claims. Given the Court's decision to deny class certification, Plaintiffs' motions to compel are moot to the extent that they seek documents or information relevant to class certification issues[5] or class claims. In the event that discovery disputes remain regarding information and documents that are relevant to Plaintiffs' individual

---

[5]As proposed by Plaintiffs in the parties' Rule 26(f) report, Phase One discovery in this case, which ended on December 14, 2007, covered "matters relevant to the class action requirements of Federal Rule of Civil Procedure 23." Docket entry #13, at 3. Plaintiffs fail to explain how additional discovery would assist them in demonstrating that the basic requirements for class certification are met in this case. *See Montolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)( "Although in some cases a district court should allow discovery to aid in the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements are satisfied or that discovery is likely to produce substantiation of the class allegations." ).

claims, Plaintiffs should file a revised motion to compel addressing those matters.

Also before the Court are Life Investors' motion to compel initial disclosures from Purifoy (docket entry #64) and motion to compel responses to requests for production of documents from Pipes (docket entry #66). Life Investors states that the parties agreed to exchange initial disclosure documents related to Purifoy's claims, but Purifoy's disclosures are incomplete. Purifoy responds that he has conducted a diligent and extensive search for documents and has now produced all relevant documents. Because Life Investors has not contradicted Purifoy's account of events, the motion to compel initial disclosures appears moot and will be denied without prejudice.

In support of its motion to compel the production of documents from Pipes, Life Investors asserts that Pipes's deposition testimony reveals that he failed to adequately respond to requests for production. Specifically, Life Investors states that Pipes failed to produce (1) all health insurance policies or health plan documents for which Diane Pipes was insured or a covered person for any period of time since 2004; (2) all documents relating to Health Advantage, and (3) medical bills and other documents demonstrating any charges incurred by Pipes for Diane Pipes's medical treatment for cancer. Pipes responds that the documents sought are irrelevant and that, in any event, Life Investors has obtained from third parties all documents regarding Diane Pipes's health insurance.

The Court finds that the aforementioned documents sought by Life Investors are relevant to a central issue in this case. Plaintiffs seek damages or restitution based on the "amount billed" by healthcare providers before any insurance discounts, insurance payments, or reductions or discounts of any kind. Documents regarding Diane Pipes's health insurance, and

medical bills and other documents demonstrating charges for medical treatment are relevant to a determination of the “amount billed” by healthcare providers.[6] The Court finds that Pipes is obligated to produce documents responsive to Life Investors’ requests for production numbers 19, 21, 22, 23, and 24 that are in his possession, custody, or control. However, given Pipes’s report that Life Investors has obtained such information from third parties, it appears that Life Investors’ motion to compel is moot. If this is not the case, Life Investors may file a renewed motion to compel.

Finally, Life Investors seeks responses to requests for production of agreements between Pipes and his attorneys, asserting that such agreements are relevant to class certification issues. Given the Court’s decision to deny class certification, Life Investors’ requests for production of attorney-client agreements are moot.

**IV.**

For the reasons stated, Plaintiffs’ motion for class certification (docket entry #41) is DENIED, Plaintiffs’ motions to compel (docket entries #45, #54) are DENIED WITHOUT PREJUDICE, and Defendant’s motions to compel (docket entry #64, #66) are DENIED WITHOUT PREJUDICE. It is further ordered that Defendant’s request for an order referring discovery matters to a United States Magistrate Judge (docket entry #56) is DENIED.

IT IS SO ORDERED THIS 21ST DAY OF NOVEMBER, 2008.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[6]Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any non-privileged matter that is relevant to any party’s claim or defense, and the information sought need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence.